# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | |
|---|---|
| MELISSA DEMASTES, individually and on behalf of all others similarly situated; ) ) ) ) Plaintiff, ) ) v. ) ) MIDWEST DIVERSIFIED MANAGEMENT CORP., dba CARMEL MAINTENANCE, LLC, WATERFORD SQUARE APARTMENTS, LLC, and PIPER GLEN APARTMENTS ASSOCIATES, LLC; MIDWEST DIVERSIFIED MANAGEMENT CORP EMPLOYEE BENEFIT PLAN AND TRUST; JAMES N. GORDON, an individual; and DOES 100 ) ) ) ) ) ) ) ) ) ) ) ) ) Defendants. | Civil No. Civil No. 3:19- cv - 00065 JURY TRIAL DEMANDED FLSA COLLECTIVE and RULE 23 CLASS ACTION COMPLAINT; ERISA RULE 23 CLASS ACTION |

COMES NOW Plaintiff, Melissa DeMastes ("DeMastes" or "Plaintiff"), on behalf of herself and all others similarly situated, by and through undersigned counsel, and files this Complaint as follows:

Plaintiff, Melissa Demastes, on behalf of herself and all others similarly situated, brings this action against Midwest Diversified Management Corp, dba Waterford Square Apartments, LLC, Piper Glen Apartments Associates, LLC, and Carmel Maintenance, LLC  (collectively "Midwest") and James N. Gordon ("Gordon") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the North Carolina Wage and Hour Act ("NCWHA"),

N.C. Gen. Stat. §§ 95-25.1 *et seq*. She brings this action, on behalf of herself and all others similarly situated, against Midwest, Gordon and the Midwest Diversified Management Corp Employee Benefit Plan and Trust (the "Plan") for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*.

## NATURE OF THE ACTION

1.      Plaintiff alleges on behalf of herself, individually, and all other similarly situated current and former non-exempt hourly employees of Midwest, who elect to opt-in to this action pursuant to the collective action provision of 29 U.S.C. § 216(b) (the "Collective Action Members"), that they are (i) entitled to unpaid wages including overtime premiums for all hours worked exceeding forty (40) in a workweek, (ii) overtime bonus premiums and (iii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, specifically 29 U.S.C. §§ 207, 216(b).

2.      Plaintiff further complains, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself, individually, and all similarly situated current and former non-exempt hourly employees of Midwest, regardless of title, who work or worked in the state of North Carolina (the "North Carolina Class") that they are entitled to all unpaid wages, plus interest, liquidated damages, costs and fees and penalties as allowed for Defendant's violations of the NCWHA, N.C. Gen. Stat. §§ 95-25.1 et seq.

3.      Plaintiff further complains, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself, individually, and all other similarly situated current and former employees of Midwest, who participated in the Plan, that they are entitled to: benefits under the Plan; recovery

2

of losses to the Plan; declaratory and injunctive relief; and an award of attorneys' fees and costs pursuant to 29 U.S.C. §§ 1001, *et seq.*

## THE PARTIES

4.      Plaintiff Melissa Demastes is an adult individual who is a resident of Charlotte, North Carolina. She is a participant within the meaning of ERISA § 3(7), 29 U.S.C. §1002.

5.      Defendant James N. Gordon ("Gordon")  is a resident of Hallandale, Florida. At all relevant times, Gordon was the president and owner of Midwest Diversified Management Corp., dba Carmel Maintenance, LLC, Waterford Square Apartments Associates, LLC, and Piper Glen Apartments Associates, LLC. At all relevant times, he was the Trustee of Midwest Diversified Employee Benefit Plan & Trust.

6.      Defendant Midwest Diversified Management Corp. is a Missouri corporation registered to do business in the State of North Carolina, with its principal place of business located at 315 Woodlawn, Suite 7, O Fallon, MO 63366, owned, operated and managed by Gordon.  At all relevant times herein, Midwest was the Plan's Sponsor and/or Administrator. Midwest is liable by virtue of its own actions and failures to act as a Plan fiduciary of the Plan. Midwest is also liable under the doctrine of *respondeat superior* in that Gordon and other fiduciaries of the Plan acted on behalf of Midwest with regard to Plan management and administration.

7.      Defendant Midwest Diversified Employee Benefit Plan & Trust (the "Plan") is an employee welfare benefit plan organized and subject to ERISA, 29 U.S.C. §§ 1001, *et seq.* and the regulations promulgated thereunder. At all pertinent times of this action, Midwest sponsored

3

and maintained the Plan. Midwest is the plan administrator for the Plan under ERISA because it is named as the plan administrator in the Plan, or alternatively, it is the employer sponsoring the Plan and therefore is the default plan administrator under ERISA § 3(16), 29 U.S.C. § 1002(16). Gordon is the designated Trustee for the Plan.

8.     On information and belief, at all time relevant herein, Midwest Diversified Management Corp was and is doing business as Defendant Carmel Maintenance, LLC Waterford Square Apartments Associates, LLC and Piper Glen Apartments Associates, LLC, all North Carolina limited liability companies owned, operated and managed by Gordon.

9.     On information and belief, Defendant Gordon is involved in the day-to-day business operations of Defendant Midwest and has authority to hire and fire employees, the authority to direct and supervise the work of employees, including Plaintiff in this case, and the authority to make decisions regarding wage and hour classifications, including the decisions to as to employee compensation and capital expenditures. At all relevant times, this individual acted and had responsibility to act on behalf of and in the interests of one or more of the Defendants in devising, directing, implementing and supervising the wage and hour practices and policies relating to employees, including the decision to not pay Plaintiffs for time and an overtime premium as required by the FLSA. As such, at all times hereinafter mentioned, Defendant Gordon has been and is an "employer" as defined by the FLSA, 29 U.S.C § 203(d).

10.     DOES 1 to 100, inclusive, are now, and/or at all times mentioned in this Complaint were, licensed to do business and/or actually doing business in the State of North Carolina. Plaintiffs do not know the true names or capacities, whether individual, partner, or corporate, of DOES 1 to 100, inclusive, and for that reason, DOES 1 to 100 are sued under such

4

fictitious names. Plaintiffs will seek leave of court to amend this Complaint to allege their names and capacities as soon as they are ascertained.

11.     Plaintiffs are informed and believe that Defendants, and each of them, are now and/or at all times mentioned in this Complaint were in some manner legally responsible for the events, happenings, and circumstances alleged in this Complaint.

12.     Plaintiffs are further informed and believe that at all relevant times all Defendants, and each of them, were and are the agents, servants, employees, joint venturers, alter egos, and/or partners of each of the other Defendants, and were, at all such times, acting within the course and scope of their employment and/or agency; and that each and every Defendant, while acting as a high corporate officer, director, and/or managing agent, principal and/or employer, expressly directed, consented to, approved, affirmed, and ratified each and every action taken by the other co-Defendants, as herein alleged, and was responsible in whole or in part for the matters referred to herein.

13.     Plaintiffs are further informed and believe that Defendants, and each of them, are now and/or at all relevant times were members of and/or engaged in a joint venture, partnership, and common enterprise, and were acting within the course and scope of, and in pursuit of that joint venture, partnership, and common enterprise and, as such, were co-employers of Plaintiffs and the putative class herein.

14.     Plaintiffs are further informed and believe that Defendants, and each of them, at all relevant times concurred with, contributed to, approved of, aided and abetted, condoned, and/or otherwise ratified the various acts and omissions of each and every one of the other Defendants in proximately causing the injuries and/or damages alleged in this Complaint.

15.     Plaintiff was employed by Midwest as a non-exempt hourly employee from February 19, 2018  until present. A written consent form for Demastes is attached hereto as Exhibit A, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 *et. seq.* and ERISA § 502 and 29 U.S.C. §§ 1132.

17.     Defendant employed Plaintiff and employs/employed others in this judicial district, owns and operates multifamily housing transacting business in this judicial district, and is registered to transact business in the State of North Carolina.

18.     The claims for violations of the NCWHA are based on the statutory law of the State of North Carolina.  Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claim. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

19.     This Court has personal jurisdiction over all Defendants because they are all residents of the United States and ERISA provides for nation-wide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## FLSA COVERAGE ALLEGATIONS

20.     At all times hereinafter mentioned, Midwest has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

21. At all times hereinafter mentioned, Midwest has been an enterprise within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

22. At all times hereinafter mentioned, Midwest has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

23. At all times hereinafter mentioned, Plaintiff has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

24. At all times hereinafter mentioned, Plaintiff was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

25. At all times hereinafter mentioned, Midwest has been an employer within the meaning of Section 95-25.2(5) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(5).

26. At all times hereinafter mentioned, Plaintiff was an employee within the meaning of Section 95-25.2(4) of the NCWHA, N.C. Gen. Stat. §§ 95-25.2(4).

7

## STATEMENT OF FACTS

*Allegations related to FLSA and NCWHA Wage Claims*

27.     Midwest is a leader in property acquisition, development, construction, management, maintenance and operation of multifamily housing in multiple states, including but not limited to, North Carolina, South Carolina, Missouri, Kansas and Florida.

28.     Midwest employs non-exempt hourly employees with various titles, including Leasing Agents, in each of its multifamily housing operations ("Apartment Complexes") in every state it owns and/or manages Apartment Complexes.

29.     Plaintiff was employed by Midwest as a non-exempt hourly employee beginning in February 19, 2018 through the present. She worked as a Leasing Agent at the Waterford Square Apartments ("Waterford"), one of Midwest's North Carolina Apartment Complexes. She also reported to work, at various times and interchangeably, at Piper Cove Apartments ("Piper Cove"), another one of Midwest's North Carolina Apartment Complexes.

30.     As a Leasing Agent, Plaintiff's job duties included renting apartments to tenants on behalf of Midwest and providing customer service to Midwest's tenants. She was required to respond to internet leads, answer prospect call, conduct property tours. Her job description specifically includes working overtime when necessary.

31.     Plaintiff and other similarly situated employees performed similar job duties and were compensated pursuant to centralized pay policies, and were subjected to similar pay practices while employed as non-exempt hourly employees for Midwest and are "employees" subject to the protections of the FLSA 29 U.S.C. §§ 203(e) & 207(a).

8

32.     Throughout the duration of her employment with Midwest, Plaintiff received bi-weekly paychecks from Midwest that did not properly record or compensate her for all the hours that she worked. The paychecks appear to identify Plaintiff's employer as Midwest's dba, Carmel Maintenance, LLC.

33.     Midwest maintained centralized policies and/or practices of requiring Plaintiff to clock out at the end of every shift, but then continue performing job duties such as tending to tenant complaints, waiting until the next Leasing Agent showed up to relieve Plaintiff, or other tenant emergencies or required tasks.

34.     Midwest maintained centralized policies and/or practices of requiring Plaintiff to clock out but not leave the Apartment Complex as she was required to wait until the next Leasing Agent showed up to relieve her as Midwest required a Leasing Agent and/or Assistant Manager on property at all times.

35.     Midwest's centralized policy and/or practice of requiring Plaintiff and all others similarly situated to clock out and either continuing working or wait for a replacement employee causes Plaintiff to regularly work 10-15 hours per week of unpaid overtime.

36.     As part of Midwest's centralized pay policies, Midwest paid Plaintiff and other similarly situated employees non-discretionary bonuses, as defined by the FLSA.

37.     Midwest's centralized pay policies included payment of non-discretionary bonuses to non-exempt hourly employees for tasks such as leasing to a new resident, renewing a new resident to stay another year, collection of delinquent rent from a tenant, collection of money for property damage from an exiting tenant, quarterly performance bonus.

38.    Midwest did not include any bonuses in its calculation of Plaintiff's or other similarly situated employees' regular rate of pay in calculating the overtime compensation paid to its hourly employees during the relevant period.

*Allegations related to ERISA Violations*

39.    The Plan is a group health insurance plan providing health insurance to employees of Midwest and the various companies it does business as, including but not limited to, Waterford Square Apartments Associates, LLC, Piper Glen Apartments Associates, LLC, and Carmel Maintenance, LLC.

40.    On information and belief, Midwest adopted the Plan on January 12, 1987 and it remains effective to the present day. Defendant Gordon is one of the Trustees of the Plan and Midwest is the Administrator of the Plan and/or the Sponsor of the Plan.

41.    On information and belief, Defendant Blue Cross Blue Shield provides insurance to the Plan. On information and belief, the insurance was brokered and/or outsourced through Paychex, Inc.

42.    Plaintiff, and others similarly situated, were participants in the Plan because of their employment with Midwest.

43.    Midwest withheld monies from each of Plaintiff's paychecks, as well as the paychecks of other employees of Midwest, for a portion of the premiums owed to the Plan.

44.    Midwest and Gordon have discretionary authority and responsibility to administer the Plan and are "fiduciaries" of the Plan as that term is defined in ERISA § 3(21), 29 U.S.C. § 1002(21). They have a fiduciary obligation to handle Plan assets - including premiums withheld from Plaintiff's and other participants' paychecks, as well as the insurance policy -- in a prudent

10

manner and to use such assets solely for the administration of the Plan and to pay benefits under the Plan.

45.     In or about September of 2018, Plaintiff sought necessary medical treatment and was told by her healthcare provider that her coverage with Blue Cross was cancelled. When she called Blue Cross, she learned that her insurance coverage was cancelled due to non-payment of premium by Midwest. The Blue Cross representative also told her, "it's not just you, it's everyone in the company."

46.     After Plaintiff notified Midwest, it apparently paid past-due premiums and Plaintiff's coverage was reinstated in November of 2018. While she was without insurance coverage, Plaintiff incurred expenses for medical treatment that have been paid in whole or in part by the Plan.

47.     In or about January of 2019, Plaintiff again sought medical care and learned from her healthcare provider that the claim would be denied. Once again, her insurance coverage was cancelled due to non-payment of premium by Midwest. Plaintiff is without insurance coverage at the time of filing of this Complaint and has incurred additional medical expenses that should have been paid in whole or in part by the Plan.

48.     Plaintiff has thus been wrongly denied healthcare benefits. Plaintiffs' use of administrative remedies, if any, was and would have been futile since the denial of benefits was due to Midwest's failure to remit payment of premiums to the Plan.

## FLSA COLLECTIVE ACTION ALLEGATIONS

49.     This action is maintainable as an "opt-in" collective action pursuant to the FLSA, 29 U.S.C. § 216(b), as to claims for unpaid overtime compensation, liquidated damages, and attorneys' fees and costs.

50.     Pursuant to 29 U.S.C. § 216(b), Plaintiff brings her First and Second Causes of action, FLSA claims, on behalf of herself, individually, and all other similarly situated employees who work or have worked for Midwest as non-exempt hourly employees and who worked more than forty (40) hours in one week and/or who received a non-discretionary bonus of any kind, and worked over forty (40) hours in one or more weeks during the period of February 8, 2016 through the filing of this Complaint, who elect to opt-in to this action ("Opt-in Plaintiffs).

51.     The FLSA § 216(b) collective action class is properly defined as:  All current and former employees of Midwest, nationwide, who 1) work or have worked for Midwest as a non-exempt hourly employee and who worked more than forty (40) hours in one or more weeks and did not receive overtime pay and/or 2)  who received a non-discretionary bonus of any kind and also worked over forty (40) hours in one or more weeks during the period of  February 8, 2016  the filing of this Complaint in this action.

52.     Consistent with Midwest's policy and pattern or practice, Plaintiff has not been paid overtime wages earned for all hours worked and Plaintiff and Opt-in Plaintiffs have not been paid premium overtime compensation for all hours worked beyond 40 per workweek.

12

53.     All of the work that Plaintiff and Opt-in Plaintiffs have performed has been assigned by Midwest, and/or Defendant has been aware of all of the work that Plaintiff and Opt-in Plaintiffs have performed.

54.     As part of its regular business practice, Midwest has intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and Opt-in Plaintiffs.

55.     Midwest's unlawful conduct has been widespread, repeated, and consistent.

56.     There are many similarly situated current and former hourly employees of Midwest who have been denied overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.  This notice should be sent to the Opt-in Plaintiffs pursuant to 29 U.S.C. § 216(b).

57.     Those similarly situated employees are known to Midwest, are readily identifiable, and can be located through Midwest's records.

58.     Plaintiff Melissa Demastes requests that she be permitted to serve as a representative of those who consent to participate in this action and that this action be granted collective action status pursuant to 29 U.S.C. § 216(b).

## FLSA CLASS ACTION ALLEGATIONS

59.     This action is maintainable as a class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure pursuant to NCWHA, N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13 for failure to pay promised and earned wages for all hours worked by Plaintiff and members of the proposed class.

13

60.     Plaintiff proposes the same class for purposes of certification under Rule 23 as under § 216(b) of the FLSA, with the exception that the class period for this state law cause of action is two years from the date of the filing of this Complaint.  The proposed class is easily ascertainable.  The number and identity of NCWHA class members are determinable from Midwest's payroll records or records over which they have control, as are the hours assigned and worked, the positions held, and the rates of pay for each class member.

61.     The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiff at this time, upon information and belief, the class is comprised of at least 40 persons.

62.     There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class in that Plaintiff and all members of the proposed class have been harmed by Midwest's failure to pay earned wages.  The common questions of law and fact include, but are not limited to the following:

(a)     whether Midwest refused to pay Plaintiff and members of the proposed class promised and earned overtime wages, including overtime bonus premiums, for all hours worked on their regular pay day in violation of NCWHA §§ 95-25.6, 95-25.7 and 95-25.13; and

(b)     whether Midwest's refusal to pay such compensation is in violation of  NCWHA.

63.     The claims of Plaintiff are typical of those claims that could be alleged by any Putative Class Member and the relief sought is typical of the relief that would be sought by each member of the class in separate actions.  All class members were subject to the same

compensation practices of Midwest; i.e. refusing to timely pay promised and earned wages. The compensation policies and practices of Midwest affected all class members similarly, and Midwest benefitted from the same type of unfair and/or wrongful acts as to each class member. Plaintiff and members of the proposed class sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures.

64.     Plaintiff is able to fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and members of the proposed class. Plaintiff has retained counsel who are experienced and competent in both wage and hour and complex class action litigation.

65.     A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Because the loss, injuries, and damages suffered by each of the individual class members are modest, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them.

66.     Important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for adjudication of individual litigation and claims would be substantial and substantially more than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class,

15

establishing incompatible standards of conduct for Midwest and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

## ERISA CLASS ALLEGATIONS

67. Plaintiff brings this action derivatively on the Plan's behalf pursuant to ERISA §§ 409 and 502, 29 U.S.C. §§ 1109 and 1132, and as a class action pursuant to Rules 23(a), (b)(1) and/or (b)(2) of the Federal Rules of Civil Procedure on behalf of Plaintiffs and the following class of persons similarly situated (the "ERISA Class").

68. The members of the ERISA Class are so numerous that joinder of all members is impracticable. While the exact number of ERISA Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are a substantial number of class members in the hundreds.

69. Common questions of law and fact exist as to all members of the ERISA Class and predominate over any questions affecting solely individual members of the ERISA Class. Among the questions of law and fact common to the ERISA Class are: (a) whether Midwest and/or Gordon each owed a fiduciary duty to Plaintiff and members of the ERISA Class; (b) whether Midwest and/or Gordon breached their fiduciary duties to Plaintiff and members of the ERISA Class by failing to act prudently and solely in the interests of the Plan's participants and beneficiaries; (c) whether Midwest and/or Gordon violated ERISA; and (d) whether the Plan has suffered losses and, if so, the appropriate measure of damages.

70.     Plaintiff's claims are typical of the claims of the members of the ERISA Class because to the extent Plaintiff seeks relief on behalf of the Plan pursuant to ERISA § 502(a)(2), her claims on behalf of the Plan are not only typical to, but identical to a claim under this section brought by any ERISA Class member. Plaintiff will fairly and adequately protect the interests of the members of the ERISA Class and have retained counsel competent and experienced in class action, complex, and ERISA litigation. Plaintiff has no interests antagonistic to or in conflict with those of the ERISA Class.

71.     Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the ERISA Class would create a risk of inconsistent adjudications with respect to individual members of the ERISA Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

72.     Class action status is also warranted under the other subsections of Rule 23(b) because:  (i) prosecution of separate actions by the members of the ERISA Class would create a risk of establishing incompatible standards of conduct for Defendants; and (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the ERISA Class as a whole.

17

## COUNT I
### (Violation of Fair Labor Standards Act – Overtime Collective Action)
### Against all Defendants, except the Plan

73.     Plaintiff, on behalf of herself, individually, and all others similarly situated, reasserts the allegations set forth in the above paragraphs.

74.     Count I arises from Midwest's violation of the FLSA, for its failure to pay all wages and overtime wages earned by Plaintiff and other similarly situated employees.

75.     Midwest violated the FLSA by failing to pay Plaintiff for all overtime hours worked in one or more individual workweeks by requiring her to work off-the-work without overtime pay.

76.     Midwest violated the FLSA by failing to pay Plaintiff and similarly situated hourly employees the correct overtime rate in one or more individual workweeks that Plaintiff and similarly situated worked.

77.     Midwest violated the FLSA by failing to pay Plaintiff and similarly situated hourly employees the correct overtime rate by failing to include non-discretionary bonuses in its calculation of Plaintiff's and similarly situated hourly employees' regular rate of pay.

78.     Midwest violated the FLSA by failing to keep, make and preserve accurate records of all time worked by Plaintiff and similarly situated hourly employees.

79.     Midwest knew or acted in reckless disregard that its compensation practices violated the FLSA.

80.     Midwest's violation of the FLSA was willful.

## COUNT II
### (Violation of North Carolina Wage and Hour Act)
### Against all Defendants, except the Plan

81.     Plaintiff, on behalf of herself, individually, and all others similarly situated, reasserts the allegations set forth in the above paragraphs.

82.     Count II arises from Midwest's policy and practice of suffering or permitting Plaintiff and/or other similarly situated hourly employees to work without paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13.

83.     Midwest violated N.C. Gen. Stat. §§ 95-25.6 by failing to pay Plaintiff and similarly situated hourly employees all promised and earned wages and overtime payments on the employees' regular payday for all hours worked.

84.     Midwest's violation of the NCWHA was willful.

## COUNT III
### (ERISA Wrongful Denial of Benefits - 29 USC § 1132(a)(1)(B)))
### Against all Defendants

85.     Plaintiff, on behalf of herself, individually, and all others similarly situated, reasserts the allegations set forth in the above paragraphs.

86.     Midwest has in place an ERISA Plan for employee health insurance.

87.     As part of Plaintiff's compensation package, she had the option of buying health insurance through the Midwest, which she elected do so. Midwest deducted from Plaintiff's weekly paychecks to cover a portion of the premium and Midwest was to pay the remainder of

19

the premium. On information and belief, Midwest likewise deducted a portion of the premiums from the weekly paychecks of the ERISA Class Members.

88.     Midwest and/or the Plan failed to pay Blue Cross Blue Shield for health insurance premiums for Plaintiff and ERISA Class Members in October 2018 and the policy was cancelled. In November of 2018, Midwest apparently paid the past-due premiums and the policy was reinstated.

89.     In January of 2019, Midwest and/or the Plan again failed to pay Blue Cross Blue Shield for health insurance premiums for Plaintiff and ERISA Class Members and the policy was cancelled again. The policy remains cancelled as of the filing of this Complaint.

90.     On both occasions, Midwest and/or the Plan failed to inform Plaintiff and ERISA Class Members that the health insurance premiums were not being paid.

91.     Plaintiff and ERISA Class Members who elected to purchase health insurance through Midwest and the Plan visited doctors and health providers during the month the policy was not in effect. Plaintiff and ERISA Class Members have had their insurance claims for such medical care denied.  Plaintiff has outstanding medical bills from that period.

92.     Plaintiff, on behalf of herself and ERISA Class Members, is entitled to judgment against Midwest and the Plan for any and all ERISA remedies, including payment of claims, attorney fees, and penalties.

## COUNT IV
**(ERISA- Breach of Fiduciary Duties - 29 USC §§ 1132(a)(2) and 1109)**
**Against all Defendants**

93.     Plaintiff, on behalf of herself, individually, and all others similarly situated, reasserts the allegations set forth in the above paragraphs.

94.     Defendant Gordon is the Trustee of the Plan and a Plan fiduciary as defined in ERISA, because he has discretionary authority and/or discretionary responsibility in the administration of the Plan. Midwest is a Plan fiduciary as defined in ERISA because it is the Plan Sponsor and/or Plan Administrator.

95.     Midwest and Gordon acted as fiduciaries in that they exercised discretionary authority and control as to the management and disposition of Plan assets because they directed the withholding of monies from Participants' paychecks.

96.     ERISA  provides that an insurance policy is an asset of an ERISA plan. The insurance policy issued to the Plan by Blue Cross is an asset of the Plan.

97.     The actions of Midwest and Gordon, as fiduciaries of the Plan, constitute a violation of his fiduciary duties owed to Plaintiff and all others similarly situated, as Plan participants and beneficiaries in that:

    a.   Midwest and/or Gordon failed to ensure that claims under the Plan were funded as required;

    b.   Midwest and/or Gordon failed to pay Plaintiff's employee contributions held out of her paychecks:

        i.    over to the insurer/third-party claims administrator (Blue Cross Blue Shield);

        ii.   into any Plan account as soon as reasonably segregable after withholding those contributions from the employees' paychecks; or

        iii.  toward in way providing benefits under the Plan.

c.   Midwest and/or Gordon failed to promptly pursue sources of other funds that would allow for recovery of benefits, including but not limited to, failure to pursue payment from:

    i.   Midwest of amounts reduced from Plaintiff's paychecks for health coverage;

    ii.   Midwest of amounts to cover the balance of valid of medical claims made;

    iii.   any errors and omissions insurance carrier;

    iv.   excess or reinsurance coverage procured by the Plan from its excess or reinsurance carrier.

d.   Midwest and/or Gordon failed in their affirmative duty as an ERISA fiduciary to inform the Plaintiff and the ERISA Class of the insolvency or pending insolvency of the Plan to pay claims, once the first payroll reductions were affected without a corresponding transmittal of funds from Midwest and/or Midwest not making the first request for employer funds from Midwest to cover health expense claims.

e.   The omission to so inform the Plaintiff and the ERISA Class was a misrepresentation by Midwest and/or Gordon (on which Plaintiff and the ERISA Class reasonably relied) to induce them to keep working for Midwest and to not revoke their elections and agreements for payroll deductions.

f.   Midwest and/or Gordon failed to act for the exclusive purpose of providing benefits to the Plan participants and their beneficiaries as required by 29 USC 1103(c)(1) and 1104(a)(1)(A).

g. Midwest and/ro Gordon failed to carry out their duties in accordance with the documents and instruments governing the Plan as required by 29 USC 1104(a)(1)(D).

h. On information and belief, Midwest and/or Gordon caused transfers of moneys constructively held as assets of the Plan for non-plan expenses and purposes.

i. On information and belief, Midwest and/or Gordon placed his own personal financial interests ahead of the financial interests of the Plaintiff and ERISA Class Members and the Plan in violation of 29 USC § 1106(b)(2) and 29 USC § 1104(a)(1)(A).

j. Midwest and/or Gordon failed to discharge his duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims, in violation of 29 USC § 1104(a)(1)(B).

98. The fraudulent violations by Midwest and/or Gordon of their fiduciary duties have resulted in losses to the Plan for which he is personally and otherwise liable pursuant to 29 USC § 1109(a).

99. The Plan has been harmed because of Midwest's and/or Gordon's breach of fiduciary dutes in that the Plan has not been administered in compliance with ERISA and other applicable law.

100. The Plan is entitled to relief:

a. requiring that Gordon and Midwest administer the Plan in compliance with ERISA and other applicable laws and regulations;

b. requiring that Gordon and Midwest and other fiduciaries cease dealing with Plan assets for their own benefit;

c. removing Midwest and Gordon and other fiduciaries with respect to any other fiduciary responsibilities pursuant to the Plan, and to have a third-party fiduciary appointed to carry out all such fiduciary functions;

d. imposing an equitable lien on the Plan assets withheld from participants as premiums by Gordon and Midwest that were not applied to proper Plan purposes;

e. imposing a constructive trust on the Plan assets withheld from participants as premiums by Gordon and Midwest that were not applied to proper Plan purposes;

f. imposing a surcharge upon Gordon and Midwest requiring that they pay to the Plan all monies withheld from Plaintiff's and other Plan participants that were not used for Plan purposes;

g. requiring Gordon and Midwest to reinstate the insurance policy for any claims submitted to the Plan;

h. requiring Gordon and Midwest to provide Plan participants and beneficiaries with truthful and accurate information about the Plan;

i. granting the Plan restitution for the amount of plan assets that Gordon and Midwest wrongfully withheld by improper use of Plan funds;

24

j.  imposing personal liability on Gordon for all amounts owed to the Plan to fund all outstanding benefits, including but not limited to any benefits owed to any parties on behalf of Plaintiff; and

k.  other appropriate relief, including declaratory, injunctive, and equitable relief.

101.  As a result of the actions of Midwest and/or Gordon, it has become necessary for the Plaintiff, on behalf of herself and others similarly situated, to retain attorneys to prosecute this action, and Plaintiff and the ERISA Class are entitled to recover reasonable attorneys' fees, pursuant to 29 USC § 1132(g).

**COUNT IV**
**(ERISA- Equitable Relief - 29 USC §§ 1132(a)(3)**
**Against all Defendants**

102.  Plaintiff, on behalf of herself, individually, and all others similarly situated, reasserts the allegations set forth in the above paragraphs.

103.  Plaintiff, on behalf of herself, individually, and all others similarly situated, requests declaratory and injunctive relief from this Court as follows:

a.  an order that Defendants, and each of them, be required to provide an accounting of the employee and Midwest contributions to the Plan;

b.  a declaration that the actions of Gordon and Midwest have violated his ERISA fiduciary duties;

c.  an order that Gordon and Midwest each be required to disgorge funds received from Midwest and to restore to the Plan losses caused by his improper actions;

d.  an order imposing a constructive trust on all Plan assets, preventing their further dissipation and mismanagement;

25

e. an order enjoining Midwest, the Plan and Gordon from further violations of ERISA;

f. all other appropriate and equitable relief as appropriate under the circumstances, including restitution and disgorgement.

104. As a result of the actions of the Defendants, it has become necessary for Plaintiff to retain attorneys, on behalf of herself and those similarly situated, to prosecute this action, and Plaintiff is entitled to recover reasonable attorneys' fees, pursuant to 29 USC § 1132(g).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and all employees similarly situated who join in this action demand:

a) Order the Defendant to file with this Court and furnish to counsel for Plaintiffs a list of all names, telephone numbers, home addresses and email addresses of all hourly employees who have worked for Defendant beginning February 8, 2016 through the date of this Complaint;

b) Authorize Plaintiffs' counsel to issue notice at the earliest possible time to all hourly employees who have worked for Defendant within the last three years beginning February 8, 2016 informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they were deprived of unpaid wages and overtime compensation, as required by the FLSA;

c) An Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Plaintiff (and those who have joined in the suit) and for liquidated damages

equal in amount to the unpaid compensation found due to Plaintiffs (and those who have joined in the suit);

d) An Order certifying this action as a class action under the NCWHA and designate the above Plaintiff as a representative on behalf of all those similarly situated hourly employees;

e) An Order pursuant to the NCWHA finding Defendant liable for unpaid back wages and liquidated damages equal in amount to the unpaid compensation due to Plaintiff and the class;

f) A Declaration and finding by the Court that Defendants willfully violated provisions of the FLSA by failing to comply with the minimum wage and overtime requirements of the FLSA;

g) Declaratory and injunctive relief, finding that they are entitled to benefits under the terms of the Plan for all medical expenses incurred, and that Defendants be ordered to pay medical benefits under the Plan;

h) Declaratory and injunctive relief to the Plan against Gordon and Midwest under ERISA §502(a)(2):

    a. requiring Gordon and Midwest to administer the Plan in compliance with ERISA and other applicable laws and regulations;

    b. requiring Gordon and Midwest to cease dealing with Plan assets for their own benefit;

c. removing Gordon and Midwest as fiduciaries and with respect to any other fiduciary responsibilities pursuant to the Plan, and to have a third-party fiduciary appointed to carry all such fiduciary functions;

d. imposing an equitable lien on the Plan assets withheld from participants as premiums by Gordon and Midwest that were not applied to proper Plan purposes;

e. imposing a constructive trust on the Plan assets withheld from participants as premiums by Gordon and Midwest that were not applied to proper Plan purposes;

f. imposing a surcharge upon Gordon and Midwest requiring that they pay to the Plan all monies withheld from Plaintiff and other Plan participants;

g. granting the Plan restitution for the amount of plan assets that Gordon and Midwest wrongfully withheld by improper use of Plan funds;

h. imposing personal liability on Gordon for all amounts owed to the Plan to fund all outstanding benefits, including but not limited to any benefits owed to any parties on behalf of Plaintiffs; and

i. Other appropriate declaratory, injunctive, and equitable relief.

i) Declaratory, injunctive, and equitable relief against the Gordon and Midwest pursuant to ERISA § 502(a)(3):

a. imposing an equitable lien on the Plan assets that have been withheld from Plaintiffs and other participants that were not used for proper Plan purposes, including but not limited to the purchase of insurance to fund benefits;

b. imposing a constructive trust on the Plan;

c. assets that have been withheld from Plaintiffs and other participants;

d. that were not used for proper Plan purposes, including but not limited to the purchase of insurance to fund benefits;

e. enjoining Fiduciary Defendants and Trustmark;

f. Defendants from reducing Plaintiff's benefits under the Plan;

g. imposing a surcharge upon the Gordon and Midwest requiring that they pay to Plaintiffs and the Plan all money they withheld that was not used for proper Plan purposes;

h. equitably estopping Gordon and Midwest from denying Plaintiff her full benefits under the Plan, including coverage for all incurred medical expenses;

i. ordering that Plaintiff is entitled to benefits under the Plan, including through the insurance policy provided without cancellation;

j. granting Plaintiff and the Plan restitution for the amount of Plan assets that Gordon and Midwest wrongfully withheld from Plaintiff and other participants but that was not used for proper Plan purposes; and

k. Other appropriate declaratory, injunctive, and equitable relief.

j) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

k) An Order awarding the costs of this action;

l) An Order awarding reasonable attorneys' fees;

m) An Order granting such other and further relief as may be necessary and appropriate.

## JURY TRIAL DEMAND

The named Plaintiff demands a trial by jury for all issues of fact.

Respectfully submitted,

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NCSB#26590
THE LAW OFFICES OF MICHELLE GESSNER, PLLC
435 East Morehead Street
Charlotte, North Carolina 28202
Tel: (704) 234-7442
Email: michelle@mgessnerlaw.com

*Attorney for Plaintiff and Putative Class Members*

30