# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:19-CV-065-RJC-DCK

| | |
|---|---|
| **MELISSA DEMASTES,** | )<br>) |
| **Plaintiff,** | )<br>) |
| v. | )  **MEMORANDUM AND**<br>)  **RECOMMENDATION** |
| **MIDWEST DIVERSIFIED MANAGEMENT CORP.;  WATERFORD SQUARE APARTMENTS, LLC;  MIDWEST DIVERSIFIED MANAGEMENT CORP EMPLOYEE BENEFIT PLAN AND TRUST; PIPER GLEN APARTMENTS ASSOCIATES, LLC; JAMES N. GORDON;  and DOES 100,** | )<br>)<br>)<br>)<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Partial Motion To Dismiss" (Document No. 21).  This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition.  Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be <u>denied</u>.

## I. BACKGROUND

Melissa Demastes ("Demastes" or "Plaintiff") initiated this action on behalf of herself and all others similarly situated with the filing of an "FLSA Collective and Rule 23 Class Action Complaint;  ERISA Rule 23 Class Action" (Document No. 1) (the "Complaint").  Plaintiff contends that Midwest Management Corp, Piper Glen Apartments Associates, LLC, and Carmel Maintenance, LLC (collectively, "Midwest") and James N. Gordon ("Gordon") (all together, "Defendants") have violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the North Carolina Wage and Hour Act, N.C.Gen.Stat. § 95-25.1 *et seq.* ("NCWHA").  (Document

No. 1, pp. 1-2). Moreover, Plaintiff alleges that Midwest, Gordon, and the Midwest Diversified Management Corp Employee Benefit Plan and Trust (the "Plan") violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). (Document No. 1, p. 2).

By her Complaint, and on behalf of all other similarly situated current and former non-exempt hourly employees of Midwest, Plaintiff contends that they are "(i) entitled to unpaid wages including overtime premiums for all hours worked exceeding forty (40) in a workweek, (ii) overtime bonus premiums and (iii) entitled to liquidated damages pursuant to the FLSA . . . entitled to all unpaid wages, plus interest, liquidated damages, costs and fees and penalties as allowed for Defendant's violations of the NCWHA, . . . [and] benefits under the Plan; recovery of losses to the Plan; declaratory and injunctive relief; and an award of attorneys' fees and costs pursuant to 29 U.S.C. §§ 1001, *et seq.*" (Document No. 1, pp. 1-2).

Plaintiff alleges that Gordon "owned, operated and managed" the Midwest Defendants and that he "and other fiduciaries of the Plan acted on behalf of Midwest with regard to Plan management and administration." (Document No. 1, pp. 3-4). Plaintiff further alleges that:

> Defendant Gordon is involved in the day-to-day business operations of Defendant Midwest and has authority to hire and fire employees, the authority to direct and supervise the work of employees, including Plaintiff in this case, and the authority to make decisions regarding wage and hour classifications, including the decisions [] as to employee compensation and capital expenditures. At all relevant times, this individual acted and had responsibility to act on behalf of and in the interests of one or more of the Defendants in devising, directing, implementing and supervising the wage and hour practices and policies relating to employees, including the decision to not pay Plaintiffs for time and an overtime premium as required by the FLSA. As such, at all times hereinafter mentioned, Defendant Gordon has been and is an "employer" as defined by the FLSA, 29 U.S.C § 203(d).

(Document No. 1, p. 4)

2

Plaintiff was employed by Midwest beginning on or about February 19, 2018, as a Leasing Agent. (Document No. 1, p. 8). Plaintiff contends that Midwest "did not properly record or compensate her for all the hours that she worked" and that she had "to regularly work 10-15 hours per week of unpaid overtime." (Document No. 1, p. 9).

In addition, Plaintiff avers that Blue Cross Blue Shield ("BCBS") provides insurance to the Plan and that Midwest withheld monies from Plaintiff's pay checks for a portion of the premiums owed to the Plan. (Document No. 1, p. 10). While seeking medical treatment in September 2018, Plaintiff was informed that her BCBS coverage was cancelled due to non-payment of the premium by Midwest. (Document No. 1, p. 11). Plaintiff was informed by a BCBS representative, "it's not just you, it's everyone in the company." Id. However, Plaintiff acknowledges that her BCBS coverage was reinstated in November 2018, and that the expenses for medical treatment she incurred when she was without insurance "have been paid in whole or in part by the Plan." Id.

Plaintiff's Complaint then alleges that in or about January of 2019, she again sought medical care and learned that her insurance coverage had again been cancelled due to non-payment of premiums by Midwest. Id. Plaintiff contends that seeking administrative remedies regarding her insurance coverage would have been futile since the denial of benefits was due to Midwest's failure to make payment of premiums to the Plan. Id. As a result, Plaintiff asserts that she incurred additional medical expenses that should have been paid in whole or in part by the Plan. Id.

Plaintiff filed the instant action on February 8, 2019. The Complaint asserts claims for: (1) violation of the FLSA; (2) violation of the NCWHA; (3) wrongful denial of benefits in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B); (4) breach of fiduciary duties in violation of ERISA, 29 U.S.C. § 1132(a)(2) and 1109; and (5) equitable relief under ERISA 29 U.S.C. § 1132(a)(3). (Document No. 1, pp. 18-26).

"Defendants' Partial Motion To Dismiss" (Document No. 21) and "Memorandum Of Law In Support…" (Document No. 22) were filed on June 24, 2019, pursuant to Fed.R.Civ.P. 12(b)(6). Defendants seek dismissal of Counts I and II as to Defendant Gordon only, and of Count III in its entirety. (Document No. 21). Defendant also seeks to strike the demand for a jury trial with respect to any claims governed by ERISA. Id. At this stage, Defendants do not seek dismissal of Plaintiff's claims against all Defendants for breach of fiduciary duty or for equitable relief pursuant to ERISA. (Document No. 21); see also (Document No. 1, pp. 20-26).

"Plaintiffs' Response In Opposition To Defendants' Partial Motion To Dismiss" (Document No. 27) was filed on July 8, 2019; and Defendants' "Reply In Support…" (Document No. 30) was filed on July 15, 2019. As such, the pending motion is now ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

4

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

**A. Counts I and II – FLSA and NCWHA – James N. Gordon**

Defendants first argue that the FLSA and NCWHA claims fail to plausibly allege that Defendant Gordon is an "employer." (Document No. 22, pp. 8-11). The "…Partial Motion to Dismiss" therefore concludes that Counts I and II should be dismissed as to Gordon. Id. Defendants' memorandum includes the following instructive guidance on determining whether a person is an employer:

> An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *see also* N.C. Gen. Stat. § 95-25.2(5). "North Carolina courts look to the FLSA for guidance" on interpreting the NCWHA. *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 707

5

(E.D.N.C. 2009). The United States Court of Appeals for the Fourth Circuit has adopted the economic realities test to determine whether an employer-employee relationship actually exists. *Kerr*, 824 F.3d at 83 (citing *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006)).

Under the economic realities test, courts consider four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Herman v. RSR Security Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). No single factor is dispositive. *Id.* The crux of this analysis is whether the individual possesses "substantial control [over] the terms and conditions of the work of . . . employees." *Id.* (quoting *Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. 427, 431 (1973)).

(Document No. 22, pp. 8-9).

According to Defendants, "Plaintiff fails to plead sufficient, particularized facts to support her claims against Gordon." (Document No. 22, p. 9). Defendants then list Plaintiff's allegations about Gordon as follows:

- "was the president and owner of Midwest Diversified Management Corp." [DE # 1, ¶ 5];
- Midwest is "owned, operated and managed by Gordon" [*Id.*, at ¶ 6];
- he is "involved in the day-to-day business operations of Defendant Midwest" [*Id.*, at ¶ 9];
- "has authority to hire and fire employees" [*Id.*];
- has "the authority to direct and supervise the work of employees" [*Id.*];
- has "the authority to make decisions regarding wage and hour classifications" [*Id.*];
- and he "acted and had responsibility to act on behalf of and in the interest of one or more of the Defendants in devising, directing, implementing and supervising the wage and hour practices and policies relating to employees, including the decision to not pay Plaintiffs for time and an overtime premium as required by the FLSA." [*Id.*].

Id. Defendants contend that these allegations, without more, "do not plausibly support Plaintiff's claim that Gordon is an 'employer.'" Id. The crux of Defendants' argument is that Plaintiff's allegations are deficient because they are not *specific* enough. (Document No. 22, pp. 10-11).

In response, Plaintiff asserts that the Complaint sufficiently alleges facts supporting Gordon's status as an employer. (Document No. 27, pp. 3-5). Plaintiff argues that she has made "specific allegations related to Gordon's day-to-day involvement and control" and that these are factual allegations that "must be taken as true for the purposes of a motion to dismiss." (Document No. 27, p. 4).

In reply, Defendants re-assert the purported deficiency of the claim that Gordon was/is an employer. (Document No. 30, pp. 2-4). Defendants suggest that the Complaint's allegations are "mere attempts to tick off the elements of the economic realities test." (Document No. 30, p. 2).

Applying the Court's typical standard of review above, the undersigned will respectfully recommend that dismissal of Counts I and II be denied at this time, without prejudice to Defendants raising these arguments in another dispositive motion following discovery. In short, the undersigned finds that Plaintiff has done enough for these claims to survive at this stage. The undersigned is not persuaded that more particularized or specific allegations are required. Instead, it appears that Plaintiff's Complaint adequately supports plausible claims against Defendant Gordon that provide fair notice to Defendants. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56) ("**Specific facts are not necessary**; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'") (emphasis added).

Based on the foregoing, the undersigned will recommend that the motion to dismiss be denied as to the claims against Defendant Gordon in Counts I and II of the Complaint.

**B. Count III – ERISA – All Defendants**

Next, Defendants argue that Count III, alleging wrongful denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), should be dismissed as to all Defendants. (Document No. 22, pp. 11-15). Defendants contend that Count III should be dismissed because Plaintiff failed to exhaust her administrative remedies and because the Complaint fails to allege a plausible claim for wrongful denial of benefits. Id.

The statute provides that "[a] civil action may be brought -- by a participant or beneficiary -- to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

As briefly discussed above, Plaintiff's argument in support of Count III is that in January 2019, Midwest and/or the Plan failed for a second time to pay BCBS for health insurance premiums for Plaintiff and other proposed class members, and therefore, the BCBS policy was cancelled and Plaintiff was denied insurance coverage for necessary medical expenses. (Document No. 1, pp. 11, 20). Plaintiff asserts that Midwest chose to cut off insurance coverage and that Plaintiff's "denial of benefits was based entirely on Midwest's failure to pay the premium." (Document No. 27, p. 6). "The decision was not made by Blue Cross." (Document No. 27, pp. 6-7).

By the instant motion, Defendants assert that "there is 'virtually no factual record to assist this court in reviewing [Plaintiff's] claims.'" (Document No. 22, p. 12) (quoting Makar v. Health Car Corp., 872 F.2d 80, 82 (4th Cir. 1989)). Defendants seem to dispute Plaintiff's factual allegations that she was informed by health care providers and/or BCBS that her insurance coverage had lapsed. (Document No. 22, p. 13). Defendants then contend that "BCBS properly denied Plaintiff's claims" because "no benefits were payable for Plaintiff's claims because there

8

was no policy in force to provide the benefits." (Document No. 22, p. 15). However, Defendants also deny that they "caused the BCBS policy to lapse due to non-payment of premiums." (Document No. 22, p. 14, n.6; Document No. 30, p. 9). Defendants do not offer any alternative explanation for why the BCBS policy lapsed.

In support of their argument that Plaintiff has failed to exhaust her administrative remedies, Defendants quote a decision from this Court stating: "ERISA does **not** contain an explicit exhaustion requirement." (Document No. 22, p. 11) (quoting Bonham v. Jefferson Pilot Fin. Ins. Co., 3:08-CV-515-RJC, 2010 WL 1405448 at *2 (W.D.N.C. Mar. 31, 2010) (emphasis added)). Moreover, in the Bonham decision on a motion for partial dismissal, Judge Conrad declined to determine if the plaintiff had exhausted administrative remedies. Bonham, 2010 WL 1405448 at *3 ("without the benefit of this and other fruits of discovery, the Court declines to find that Plaintiff has failed as a matter of fact or law, to exhaust administrative remedies.")

In response, Plaintiff argues that "ERISA plaintiffs are not obligated to plead exhaustion or futility because failure to exhaust is an affirmative defense that must be pled and proven by the defendant." (Document No. 27, p. 5) (citations omitted). Plaintiff further notes that the Fourth Circuit recognizes a futility exception to exhausting administrative remedies, but the "analysis is a fact-intensive inquiry." Id. (citations omitted).

The incomplete and contradictory factual assertions by the parties, along with Defendants' acknowledgement that "[t]here is a split opinion among the district courts of this circuit as to whether an ERISA plaintiff must plead exhaustion of administrative remedies as an element of her claim," lead the undersigned to conclude that dismissal of Count III is premature. (Document No. 30, p. 5). The undersigned is persuaded that questions of exhaustion and futility would be better

9

addressed, if necessary, after further development of the record. Moreover, accepting Plaintiff's factual allegations as true, it appears Plaintiff has stated a plausible claim.

Based on the foregoing, therefore, the undersigned will also recommend that Defendants' motion to dismiss be denied as to Count III. The undersigned suggests that when the parties file their proposed discovery plan, they might consider allowing some initial discovery before an agreed-upon deadline for Plaintiff to file an Amended Complaint.

### C. Jury Trial

Finally, Defendants argue that all the Circuit Courts of Appeal that have addressed the issue are unanimous that "actions under ERISA for any relief provided therein are for the court, not a jury." (Document No. 22, p. 17) (citations omitted).

In response, Plaintiff asserts that a jury trial is appropriate as to the non-ERISA claims and that the Court can later bifurcate the ERISA claims for a bench trial. (Document No. 27, p. 7). Plaintiffs further assert that Defendants have improperly filed their jury trial demand under Fed.R.Civ.P. 12(b)(6), instead of Fed.R.Civ.P. 39. Id.

Defendants' reply brief suggests the parties agree on a proposed bifurcation; and Defendants state that they "see no reason for the Court not to deal with the issue now." (Document No. 30, p. 11).

The undersigned will respectfully decline to issue a recommendation at this time as to the proposed bifurcation of a trial of this matter. Instead, that issue might be better addressed at a later date and/or at the discretion of the presiding district judge.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' Partial Motion To Dismiss" (Document No. 21) be **DENIED**.

10

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: January 30, 2020

David C. Keesler
United States Magistrate Judge