UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-00065-RJC-DCK

| | |
|---|---|
| MELISSA DEMASTES, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MIDWEST DIVERSIFIED MANAGEMENT CORP, d/b/a Carmel Maintenance, LLC, Waterford Square Apartments, LLC, and Piper Glen Apartments Associates, LLC, MIDWEST DIVERSIFIED MANAGEMENT CORP EMPLOYEE BENEFIT PLAN AND TRUST, JAMES N. GORDON, and DOES 100, )<br>)<br>Defendants. ) | ORDER |

**THIS MATTER** comes before the Court on Defendants' Partial Motion to Dismiss, (Doc. No. 21), and the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 32).

I. BACKGROUND

Defendant Midwest Diversified Management Corp ("Midwest") employed Plaintiff as a non-exempt hourly employee beginning on February 19, 2018. Defendant James N. Gordon ("Gordon") was the president and owner of Midwest. Plaintiff alleges that throughout her employment with Midwest, she received bi-weekly paychecks from Midwest that did not properly record, or compensate her for, all hours worked. Plaintiff additionally alleges that she regularly worked ten to fifteen hours per week of unpaid overtime.

Defendant Midwest Diversified Management Corp Employee Benefit Plan and Trust (the "Plan") is an employee welfare benefit plan sponsored and administered by Midwest. Gordon is the Trustee of the Plan. Midwest deducted funds from Plaintiff's paychecks that were to be applied to health insurance premiums paid by the Plan to Blue Cross Blue Shield, the Plan's insurance provider. When Plaintiff sought medical treatment in September 2018, she was informed that her coverage with Blue Cross Blue Shield had been cancelled due to Midwest's failure to make premium payments. Plaintiff notified Midwest of the issue, who then made past-due premium payments to Blue Cross Blue Shield and paid Plaintiff's medical expenses incurred while she was without coverage, and Plaintiff's coverage was reinstated in November 2018. But in January 2019, Plaintiff again sought medical treatment and was told by her healthcare provider that her claim would be denied because her coverage was cancelled due to Midwest's failure to make premium payments. Plaintiff has incurred medical expenses that should have been paid in whole or in part by the Plan.

Plaintiff initiated this putative collective and class action on February 8, 2019. The Complaint brings claims for (1) violation of the Fair Labor Standards Act ("FLSA"), (2) violation of the North Carolina Wage and Hour Act ("NCWHA"), (3) wrongful denial of benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (4) breach of fiduciary duty under ERISA, 29 U.S.C. §§ 1132(a)(2) and 1109, and (5) equitable relief under ERISA, 29 U.S.C. § 1132(a)(3).

Defendants filed their partial motion to dismiss on June 24, 2019. Defendants move under Rule 12(b)(6) to dismiss Plaintiff's first and second claims as to Gordon and Plaintiff's third claim as to all Defendants. In addition, Defendants move under Rule 39 to strike Plaintiff's jury demand as to the ERISA claims.

In the M&R, the Magistrate Judge recommended that Defendants' motion be denied. Defendants timely filed objections to the M&R.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well known. A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a claim. Fannie Mae v. Quicksilver LLC, 155 F. Supp. 3d 535, 542 (M.D.N.C. 2015). A claim attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Facial plausibility means allegations that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. at 678.

At the same time, specific facts are not necessary; the complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555. Additionally, when ruling on a motion to dismiss, a court must accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc., 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

Defendants object that (1) Plaintiff's allegations are insufficient to plead that Gordon is an employer, necessitating dismissal of Plaintiff's first and second claims as to Gordon, (2) Plaintiff failed to exhaust her administrative remedies, necessitating dismissal of Plaintiff's third claim, and (3) Plaintiff is not entitled to a jury trial on her ERISA claims and, as such, her jury demand as to those claims should be stricken. After de novo review, the Court concludes that Plaintiff's first and second claims should be dismissed as to Gordon, Plaintiff's third claim should be dismissed as to all Defendants, and Plaintiff's jury demand should be stricken as to

4

her ERISA claims.

### A. Employer Status of Gordon

Plaintiff's first and second claims assert that Defendants violated the FLSA and NCWHA by failing to pay Plaintiff all wages and overtime payments earned. To state a claim under the FLSA or the NCWHA, plaintiff must allege sufficient facts to support the conclusion that defendant is an "employer." Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 83 (4th Cir. 2016); Garcia v. Frog Island Seafood, Inc., 644 F. Supp. 2d 696, 707 (E.D.N.C. 2009) ("In interpreting the NCWHA, North Carolina courts look to the FLSA for guidance."). The FLSA and NCWHA define "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); N.C. Gen. Stat. § 95-25.2(5). "In deciding whether a particular individual is an employer for purposes of the FLSA, courts apply an economic reality test, examining the totality of the circumstances to determine whether the individual has sufficient operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages." Garcia, 644 F. Supp. 2d at 720 (quotation marks omitted). Courts apply this same test to determine whether an individual is an employer under the NCWHA. Lima v. MH & WH, LLC, 372 F. Supp. 3d 317, 335 n.9 (E.D.N.C. 2019). "Relevant factors include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Kerr, 824 F.3d at 83 (quotation marks omitted). No one factor

5

is dispositive. Id.

Here, the Complaint's allegations regarding Gordon's operational control are limited to the following:

> On information and belief, Defendant Gordon is involved in the day-to-day business operations of Defendant Midwest and has authority to hire and fire employees, the authority to direct and supervise the work of employees, including Plaintiff in this case, and the authority to make decisions regarding wage and hour classifications, including the decisions to [sic] as to employee compensation and capital expenditures. At all relevant times, this individual acted and had responsibility to act on behalf of and in the interests of one or more of the Defendants in devising, directing, implementing and supervising the wage and hour practices and policies relating to employees, including the decision to not pay Plaintiffs [sic] for time and an overtime premium as required by the FLSA.

(Doc. No. 1, ¶ 9.)

Such conclusory allegations—made on information and belief—are insufficient to plead that Gordon was an "employer" for purposes of the FLSA or NCWHA. The Complaint is devoid of any factual allegations to support Plaintiff's speculative and conclusory allegations that Gordon was involved in Midwest's day-to-day business operations and was authorized to hire and fire employees and make decisions regarding wages. See Acosta v. JM Osaka, Inc., 270 F. Supp. 3d 907, 913 (E.D. Va. 2017) (dismissing plaintiff's FLSA claim because the complaint failed to plead facts showing that defendant controlled when employees had to work, how long they had to work, whether they had to work overtime, or how much to pay employees); Alvarez-Soto v. B. Frank Joy, LLC, No. TDC-15-1120, 2017 U.S. Dist. LEXIS 97772, at *30 (D. Md. June 23, 2017) (dismissing plaintiff's FLSA claims against the individual defendants because the complaint failed to allege that they had any indicia of control

6

over the conditions of employment or authority to terminate employees). In the absence of factual allegations showing that Gordon had operational control, the Complaint's allegations that Gordon was the president and owner of Midwest are insufficient to render him an "employer." Acosta, 270 F. Supp. 3d at 913, 915 (stating that the bare allegation that defendant was a manager is insufficient to show that defendant is an employer and "[t]he FLSA should not be read so broadly as to make any supervisory employee, even those without any control over the corporation's payroll, personally liable for the unpaid or deficient wages of other employees" (quotation marks omitted)); Alvarez-Soto, 2017 U.S. Dist. LEXIS 97772, at *29 ("[A]n individual's status as a high-level corporate shareholder or officer does not automatically impart 'employer' liability to that individual." (alteration in original)).

Therefore, the Complaint lacks sufficient facts to plausibly allege that Gordon is an employer under the FLSA or NCWHA, and the Court dismisses these claims as to Gordon.

### B. Exhaustion of Administrative Remedies

Plaintiff's third claim is for wrongful denial of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). Defendants move to dismiss that claim on the ground that Plaintiff failed to exhaust her administrative remedies.

"ERISA requires benefit plans covered by the Act to provide internal dispute resolution procedures for participants whose claims for benefits have been denied." Makar v. Health Care Corp., 872 F.2d 80, 83 (4th Cir. 1989). In mandating these internal claims procedures, Congress intended "to minimize the number of frivolous

7

ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement." Id. Consistent with this intent, the Fourth Circuit has held that although ERISA does not contain an explicit exhaustion provision, "a claimant must exhaust the administrative remedies provided in an employee benefit plan before prosecuting an ERISA claim in federal court." DuPerry v. Life Ins. Co. of N. Am., 632 F.3d 860, 875 (4th Cir. 2011). "This exhaustion requirement rests upon the Act's text and structure as well as the strong federal interest encouraging private resolution of ERISA disputes." Makar, 872 F.2d at 82.

The Fourth Circuit recognizes a futility exception to the exhaustion requirement. DuPerry, 632 F.3d at 875. "That exception is, however, very narrow." Thomas v. Wells Fargo Ins. Servs., No. 2:07-671, 2010 U.S. Dist. LEXIS 95973, at *36 (S.D. W. Va. Sept. 14, 2010). To demonstrate futility, plaintiff must "make a 'clear and positive' showing that any pursuit of administrative remedies would be futile." Rogers v. UnitedHealth Grp., Inc., 144 F. Supp. 3d 792, 801 (D.S.C. 2015) (quoting Makar, 872 F.2d at 83). The futility exception "has been applied only when resort to administrative remedies is clearly useless." Corrias v. UnumProvident Corp., 472 F. Supp. 2d 685, 688 (M.D.N.C. 2007) (quotation marks omitted).

Here, the Complaint alleges that pursuit of administrative remedies "would have been futile since the denial of benefits was due to Midwest's failure to remit payment of premiums to the Plan." (Doc. No. 1, ¶ 48.) The Court fails to see why the fact that Plaintiff was allegedly denied benefits under the Plan because of Midwest's

failure to make premium payments to Blue Cross Blue Shield renders pursuit of the Plan's administrative remedies futile. In fact, the other allegations of the Complaint belie this allegation. Plaintiff alleges that Blue Cross Blue Shield told her in September 2018 that her insurance coverage was cancelled because Midwest failed to make premium payments. After Plaintiff notified Midwest of this issue, Midwest paid past-due premiums, Plaintiff's coverage was reinstated, and the Plan paid Plaintiff's medical expenses that were incurred while she was without coverage. Thus, the Complaint's allegation that pursuit of administrative remedies would have been futile because the denial of benefits was due to a failure to make premium payments is insufficient to invoke the futility exception to the exhaustion requirement. See Bonham v. Jefferson Pilot Fin. Ins. Co., No. 3:08cv515, 2010 U.S. Dist. LEXIS 39425, at *7 (W.D.N.C. Mar. 31, 2010) ("A plaintiff must plead more than bare allegations of futility; the allegations must clearly show that he was, or would have been, denied access to the claims procedures provided for in the benefits plan." (quotation marks omitted)). Therefore, the Court dismisses without prejudice Plaintiff's third claim to allow Plaintiff the opportunity to pursue her remedies under the Plan. Makar, 872 F.2d at 83 (remanding the case to the district court with instructions to dismiss without prejudice plaintiffs' ERISA action to allow plaintiffs the opportunity to pursue their remedies under the plan).

### C. Jury Demand

Defendants move under Rule 39 to strike Plaintiff's jury demand as to her ERISA claims. Rule 39(a)(2) provides that all issues so demanded must be tried by

jury unless "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." A party may move to strike a jury demand at any time. Mowbray v. Zumot, 536 F. Supp. 2d 617, 621 (D. Md. 2008). "Plaintiff's demand for a jury trial is justified if either there is a statutory right to a jury trial under ERISA, or a constitutional right under the Seventh Amendment." Lamberty v. Premier Millwork & Lumber Co., 329 F. Supp. 2d 737, 744 (E.D. Va. 2004). As ERISA does not statutorily provide for trial by jury, the Court must determine whether the Seventh Amendment provides a right to a jury trial on Plaintiff's ERISA claims. Id.

The Seventh Amendment preserves the right to a jury trial "for 'Suits at common law, where the value in controversy shall exceed twenty dollars.' The phrase 'Suits at common law' refers to actions involving the determination of legal, rather than equitable, rights and remedies." Id. To determine whether a Seventh Amendment right to a jury trial exists, "the court examines both (1) the nature of the issues involved, to determine if they would have historically been brought in a court of law or a court of equity, and (2) the remedy sought, to determine whether it is legal or equitable in nature." Termini v. Life Ins. Co. of N. Am., 474 F. Supp. 2d 775, 777 (E.D. Va. 2007) (quotation marks omitted).

Here, Plaintiff's remaining ERISA claims are for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) and for equitable relief under 29 U.S.C. § 1132(a)(3). With respect to the former claim, "there is little doubt that actions brought under section [1132(a)(2)] are more akin to those actions traditionally adjudicated by the

10

Chancellors at equity than to those adjudged in courts of law." Perez v. Silva, 185 F. Supp. 3d 698, 701–02 (D. Md. 2016). Claims for breach of fiduciary duty "are examined under trust law principles and fiduciary standards, which are within the exclusive jurisdiction of equity courts." Termini, 474 F. Supp. 2d at 778. In addition, Plaintiff's breach of fiduciary duty claim seeks relief that is equitable in nature—namely, injunctive relief, an equitable lien, a constructive trust, and surcharge. See Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 331 (4th Cir. 2006) (stating that injunctive relief is an equitable remedy); Perez, 185 F. Supp. 3d at 703 (stating that surcharge is "a trust remedy that is 'equitable in character and enforceable . . . in a court exercising equity powers'" (omission in original) (quoting Restatement (Third) of Trusts § 95 (Am. Law Inst. 2012))); Termini, 474 F. Supp. 2d at 779 (stating that in actions for breach of fiduciary duty under ERISA, "any entitlement to monetary relief necessarily turns upon whether or not the fiduciary has breached its ERISA duties; thus, any relief sought is necessarily intertwined with the equitable process of resolving the ultimate issue—whether or not there has been a breach of fiduciary duty"). Accordingly, Plaintiff is not entitled to a jury trial on her breach of fiduciary duty claim. Perez, 185 F. Supp. 3d at 705 (granting defendants' motion to strike plaintiff's jury demand on her ERISA claim for breach of fiduciary duty); Termini, 474 F. Supp. 2d at 779 (same); Cherepinsky v. Sears Roebuck & Co., 455 F. Supp. 2d 470, 476 (D.S.C. 2006) (same).

Plaintiff is also not entitled to a jury trial on her claim for equitable relief under 29 U.S.C. § 1132(a)(3). It is well established in the Fourth Circuit that as section

11

1132(a)(3) only authorizes equitable remedies, there is no right to a jury trial on claims under that section. Phelps v. C.T. Enters., 394 F.3d 213, 222 (4th Cir. 2005) (holding that plaintiff was not entitled to a jury trial on her claim under section 1132(a)(3)); Cherepinsky, 455 F. Supp. 2d at 476 (granting defendants' motion to strike plaintiff's jury demand on her claim under section 1132(a)(3)). Therefore, the Court grants Defendants' motion to strike Plaintiff's jury demand as to her ERISA claims.

IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. The Court declines to adopt the M&R, (Doc. No. 32); and
2. The Court **GRANTS** Defendants' Partial Motion to Dismiss, (Doc. No. 21). Plaintiff's first and second claims are **DISMISSED** as to Gordon, and Plaintiff's third claim is **DISMISSED without prejudice**. Plaintiff's jury demand is **STRICKEN** as to her fourth and fifth claims under ERISA.

Signed: March 24, 2020

Robert J. Conrad, Jr.
United States District Judge